UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARTHA CELIA RODRIGUEZ VALENCIA,

    Petitioner,

v.                                                            Case No. 3:26-cv-297-MMH-PDB

KRISTI NOEM, et al.,

    Respondents.

## ORDER

### I. Status

Petitioner Martha Celia Rodriguez Valencia, an immigration detainee, initiated this action through counsel by filing a Verified Petition for Writ of Habeas Corpus and Complaint for Emergency Declaratory and Injunctive Relief (Doc. 1; Petition) on February 12, 2026. That same day, Valencia filed an Emergency Motion for Temporary Restraining Order and for Preliminary Injunction (Doc. 2; Motion). The Court denied the Motion without prejudice. See Order (Doc. 5). Valencia subsequently filed an Amended Motion for Temporary Restraining Order and for Preliminary Injunction (Doc. 6: Amended Motion). On February 17, 2026, the Court granted Valencia's request for a temporary restraining order and enjoined Respondents from removing

her from the Jacksonville Division of the Middle District of Florida through March 3, 2026. See Temporary Restraining Order (Doc. 7; TRO).

The Court held a status hearing on February 19, 2026, during which the Court advised the parties that it would consolidate the resolution of the merits of the Petition with the determination of whether to convert the TRO into a preliminary injunction and set a briefing schedule. See Clerk's Minutes (Doc. 9). Respondents subsequently filed a Response to Petitioner's Emergency Motion for Temporary Restraining Order and Habeas Petition (Doc. 10; Response) with exhibits (Docs. 10-1 through 10-8). Valencia filed a counseled Reply (Doc. 11; Reply).

Finding good cause, the Court extended the TRO through March 17, 2026, and directed Valencia to file supplemental briefing. See Order (Doc. 12). Valencia subsequently filed supplemental briefing (Doc. 13; Supplemental Reply). This case is ripe for review.

## II. Valencia's Petition

Valencia, a citizen of Colombia, entered the United States at the San Ysidro, California port of entry on August 3, 2023. Petition at 2. Valencia was issued a Notice to Appear advising that she was an "arriving alien" and setting a hearing before an immigration judge on December 9, 2026, at 9:00 a.m. Id.; see also Doc. 1-3 at 2. Valencia was then paroled and permitted to enter the

United States while she awaited the hearing. Petition at 2. On July 26, 2024, Valencia submitted an asylum application that remains pending. Id. United States Immigration and Customs Enforcement (ICE) issued Valencia a work permit and a social security number. Id.; see also Doc. 1-5 at 2–3. According to Valencia, she has resided in Kissimmee, Florida, with her husband since July 2024. Petition at 2.

On December 23, 2025, law enforcement arrested Valencia in Osceola County, Florida on a charge of misdemeanor battery. Id. On January 22, 2026, the local prosecutor filed a "no information notice," stating that Valencia "should be released." Id. at 3; see also Doc. 1-6 at 2. Nevertheless, since that time, Valencia alleges that she has been held on an ICE detainer at various local jails, including the Orange County Jail, the Baker County Jail, and now the Flagler County Jail. Petition at 3.

In Count One of her Petition, Valencia argues that she is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and is entitled to a bond hearing. Id. at 6–9. Valencia contends that her prolonged detention without a bond hearing violates her right to due process. Id. In Count Two, Valencia asserts that she is entitled to a temporary restraining order and a preliminary injunction. Id. at 9–12. As relief, she asks the Court to direct her immediate release from detention. Id. at 12.

3

### III. Analysis

The Court first addresses Respondents' arguments that two statutory provisions—8 U.S.C. § 1252(g) and § 1252(b)(9)—deprive this Court of jurisdiction to adjudicate Valencia's claims and that Valencia failed to exhaust her administrative remedies prior to filing this case. See Response at 10–11. Because the Court rejects those arguments, the Court then addresses the merits of Valencia's claims.

#### a. 8 U.S.C. § 1252(g)

Section 1252(g) states in pertinent part that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "It is a 'discretion-protecting provision' designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999)). Nevertheless, the provision "does not cover 'the universe of deportation claims.'" Id. (quoting Reno, 525 U.S. at 482). Indeed, the Supreme Court has explained that section 1252(g) should be narrowly read to encompass only the "three discrete actions that the Attorney General may

4

take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." Reno, 525 U.S. at 482 (internal quotation marks and citation omitted). While "'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [court] review" by this section. Camarena, 988 F.3d at 1272.

Here, Valencia is not attacking ICE's decision to commence removal proceedings, adjudicate her case, or execute an order of removal. Indeed, Valencia does not have an order of removal. Instead, Valencia is attacking ICE's decision to treat her as an "applicant for admission" under § 1225(b), which imposes mandatory detention, rather than as a noncitizen under § 1226(a), which permits a bond hearing before an immigration judge. Thus, the Court finds that § 1252(g) does not bar Valencia's claims.

### b. 8 U.S.C. § 1252(b)(9)—the "Zipper Clause"

Under the "Zipper Clause," "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). But "§ 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process

5

by which . . . removability will be determined.'" Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018)). The Eleventh Circuit has "clarified that the zipper clause only affects cases that 'involve[ ] review of an order of removal.'" Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs., 964 F.3d 1250, 1257 (11th Cir. 2020) (quoting Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1367 (11th Cir. 2006)).

Here, Valencia does not appear to have an order of removal. Nor is she seeking to challenge the decision to seek removal or the process by which removability will be determined. Instead, as found above, she is challenging her classification under § 1225(b), which requires mandatory detention. Thus, § 1252(b)(9) does not bar this Court's review of her claims.

### c. Exhaustion

A petitioner need not exhaust administrative remedies if "the administrative body is shown to be biased or has otherwise predetermined the issue before it." McCarthy v. Madigan, 503 U.S. 140, 148 (1992). Recently, the Board of Immigration Appeals (BIA) found that immigration judges have no authority to consider bond requests from noncitizens who entered the United States without inspection "because aliens who are present in the United States without admission are applicants for admission as defined under section

6

235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025). Thus, the BIA has already "predetermined" the issue and requiring Valencia to make an administrative request for a bond hearing would be futile. District courts around the country, including some judges on this Court, have reached this same conclusion and declined to dismiss similar cases based on the alleged failure to exhaust. See, e.g., Patel v. Hardin, No. 2:25-cv-870-JES-NPM, 2025 WL 3442706, at *3 (M.D. Fla. Dec. 1, 2025)[1] (collecting cases); see also Mohammed v. Olson, No. 1:25-CV-02404-TWP-MKK, 2025 WL 3541819, at *2 (S.D. Ind. Dec. 10, 2025) (rejecting the respondents' argument that the petitioner must exhaust his administrative remedies by requesting a bond hearing; reasoning that "[b]ecause [the p]etitioner entered the country without inspection, if he were to move for a bond hearing, an [immigration judge] would have to decline jurisdiction over the issue" based on binding BIA precedent). Considering the circumstances, the Court rejects Respondents' exhaustion argument.

---

[1] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

7

#### d. Merits

The underlying premise of Valencia's claim in Count One is that she should be classified under 8 U.S.C. § 1226(a) and afforded a bond hearing before an immigration judge instead of being mandatorily detained under 8 U.S.C. § 1225(b)(2). The Court examines each of these statutes in turn.

Section 1225 governs "applicants for admission," which the statute defines as "[a]n alien present in the United States who has not been admitted" or those "arriv[ing] in the United States." 8 U.S.C. § 1225(a)(1); see Jennings, 583 U.S. at 287 (noting that under § 1225, "an alien who arrives in the United States, or is present in this country but has not been admitted, is treated as an applicant for admission" (internal quotation marks and citation omitted)). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). Immigration laws require applicants for admission to be inspected by immigration officers to determine whether they should be admitted into the country. Jennings, 583 U.S. at 287. Certain applicants are subject to expedited removal. See 8 U.S.C. § 1225(b)(1). But, as relevant here, § 1225(b)(2) "serves as a catchall provision," Jennings, 583 U.S. at 287, and provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien

8

seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained," 8 U.S.C. § 1225(b)(2)(A).

On the other hand, section 1226(a) states: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General "may continue to detain the arrested alien" or "may release the alien on bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)-(2) (emphasis added). The Supreme Court has recognized that this section "applies to aliens already present in the United States." Jennings, 583 U.S. at 303.

"'For the past three decades,'" the government has recognized "this dichotomy." Lopez v. Hardin, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) (quoting Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025) (appeal filed Oct. 24, 2025)). On July 8, 2025, however, the government changed course when the Department of Homeland Security (DHS) issued the following guidance:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are

9

> also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025). The BIA adopted and applied this policy in In re Yajure Hurtado, 29 I. & N. Dec. 216 (2025). But district courts around the country have largely rejected the government's new interpretation of these regulations. See, e.g., Cetino v. Hardin, No. 2:25-CV-1037-JES-DNF, 2025 WL 3558138, at *3 (M.D. Fla. Dec. 12, 2025); Robles v. U.S. Dep't of Homeland Security, No. 1:25-CV-1578, 2025 WL 3558128, at *6 & n.3 (W.D. Mich. Dec. 12, 2025); Martinez-Martinez v. Noem, No. 25CV2975-GPC(VET), 2025 WL 3552746, at *6 (S.D. Cal. Dec. 11, 2025) ("Given the Government's longstanding interpretation of §§ 1225(b) and 1226(a), the [c]ourt is further persuaded that 'seeking admission' applies to arriving aliens and not aliens who have entered without inspection and lived in the United States for years."); Belsai D.S. v. Bondi, - - - F. Supp. 3d - - -, 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) ("Overwhelmingly, courts have rejected the interpretation offered by [the r]espondents that § 1225(b)(2) requires the detention of all noncitizens living in the country who are 'inadmissible' because

they entered the United States without inspection."); Pizarro Reyes, 2025 WL 2609425, at *7 (collecting cases). But see Lopez v. Dir. of Enf't & Removal Operations, - - - F. Supp. 3d - - -, 2026 WL 261938, at *8 (M.D. Fla. Jan. 26, 2026) (disagreeing with the statutory interpretation that noncitizens seeking admission form "a distinct and narrower class than applicants for admission"); Mejia Olalde v. Noem, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025) (finding that § 1225(a)(1) "explicitly includes more than just arriving aliens in the definition of 'applicant[s] for admission'"); Vargas Lopez v. Trump, 802 F. Supp. 3d 1132, 1142 (D. Neb. 2025) (finding that "just because [the petitioner] illegally remained in this country for years does not mean that he is suddenly not an 'applicant for admission' under § 1225(b)(2)").

Until recently, appellate courts had yet to weigh in on the issue. On February 6, 2026, the Fifth Circuit Court of Appeals issued a published, but not unanimous opinion, reaching the opposite conclusion. See Buenrostro-Mendez v. Bondi, 166 F.4th 494, 498 (5th Cir. 2026). The majority concluded that an alien without lawful admission who has been present in the United States for a period of time is subject to mandatory detention under §

1225(b)(2).[2] See id. That decision is not binding here. And while the Court respects the reasoned decision of the majority, the dissenting opinion is more persuasive. As such, the Court adopts the reasoning of the Buenrostro-Mendez dissent in full. See id. at 508–21 (Douglas, J., dissenting). Therefore, it appears Valencia is subject to § 1226, not § 1225(b)(2), because she has continuously resided in the United States since 2023.

Nevertheless, Respondents argue that the automatic expiration of Valencia's parole returned her to the status of an "arriving alien" subject to mandatory detention under § 1225(b)(2). See Response at 6–7. In support of their argument, Respondents cite to a DHS regulation which provides that upon expiration of parole under 8 U.S.C. § 1182(d)(5)(A), a noncitizen "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i).

The Court declines to adopt Respondents' interpretation of § 1182(d)(5)(A).

> While Respondents are correct that the expiration of § 1182(d)(5)(A) parole returns the parolee "to the custody from which he was paroled" "district

---

[2] A circuit split is likely on this issue. In ruling on a motion to stay pending appeal, the Seventh Circuit preliminarily determined that DHS was not likely to prevail on its argument that "§ 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders." Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1062 (7th Cir. 2025). The issue is also before the Eleventh Circuit. See Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065 (11th Cir.) (oral argument set for March 26, 2026).

> courts across the country have consistently held that the expiration of § 1182 parole does not require treating the noncitizen as if they had never been paroled in the first place." Linarez v. Stamper, No. 1:26-cv-101-JAW, 2026 WL 592294, at * 5 (D. Me. Mar. 3, 2026). Instead, "Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." Rodriguez-Acurio v. Almodovar, No. 2:25-cv-6065, 2025 WL 3314420, at * 17 (E.D.N.Y. Nov. 28, 2025).

Matkarimov v. Noem, No. 26-48-DLB, 2026 WL 700072, at *2 (E.D. Ky. Mar. 12, 2026). Finding their reasoning persuasive, this Court joins other district courts in finding that, following the expiration of parole, noncitizens like Valencia do not return to the status of an "arriving alien." See, e.g., Coal. For Human Immigrant Rights v. Noem, 805 F. Supp. 3d 48, 85 (D.D.C. Aug. 1, 2025) ("[S]ection 1182(d)(5)(A) does not, as Defendants insist, say that parolees return, upon the termination or expiration of their parole, to 'the position of an applicant for admission standing at the threshold of entry.'"); Wu v. Stamper, No. 1:26-CV-00090-SDN, 2026 WL 608286, at *4 (D. Me. Mar. 4, 2026) (finding that "a more judicious reading of section 1182(d)(5)(A) suggests that a noncitizen whose parole has expired should be treated similarly to the 'vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal.'"); Qasemi v. Francis, No. 25-cv-10029

(LJL), 2025 WL 3654098, at * 6 (S.D.N.Y. Dec. 17, 2025) ("It would try any plain understanding of the term arrival to classify an individual like [petitioner] who has lived and worked in the United States for over a year prior to his re-detention as an arriving alien."); Walizada v. Trump, No. 2:25-cv-768, 2025 WL 3551972, at *15 (D. Vt. Dec. 11, 2025) (finding it "unjust" and "counterintuitive" that a petitioner "who was welcomed into the United States after extensive screening, would be entitled to less statutory protection and due process rights than someone who has entered the country illegally and committed certain crimes here.").[3]

Indeed, Valencia can no longer be classified as a noncitizen "who is arriving in the United States" even though she was initially detained upon her arrival in California on August 3, 2023. When ICE most recently detained her in Florida on January 22, 2026—more than two years after she entered the United States—Valencia was not in the process of "arriving" in the United

---

[3] The Court notes that in Ibragimov v. Gonzales, the Second Circuit exercised deference to a provision within 8 U.S.C. § 1.1(q), the predecessor to 8 C.F.R. § 1.2, which provided that "[a]n arriving alien remains such even if paroled pursuant to [INA] section 212(d)(5) . . . ." 476 F.3d 125, 135–37 & n.17 (2d Cir. 2007) (citing Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984)). The Second Circuit therefore held that a petitioner who had overstayed his visa, left, and had been paroled back into the United States was an "arriving alien" because that was his status before he was paroled and 8 C.F.R. § 1.1(q) "command[ed] that 'an arriving alien remains such even if paroled." Ibragimov, 476 F.3d at 136 (emphasis in original). Of course, that decision was before the Supreme Court issued Loper Bright Enters. v. Raimondo, 603 U.S. 369, 394 (2024), which determined that courts must exercise independent judgment in determining the meaning of statutory provisions.

States. It would be absurd to find that Valencia is still in the process of "arriving" in the United States when she has been continuously residing here for at least a year after the expiration of her parole, she was issued a social security card, and she was issued a five-year work permit on May 27, 2025, after her parole had expired. Doc. 1-5 at 2–3. Thus, she is not properly detained under § 1225(b)(2) as Respondents contend. Instead, her detention is governed by § 1226, and the Petition is due to be granted.

## IV. Remedy

The Court next considers the appropriate relief in this case. Respondents urge the Court to direct a bond hearing, see Response at 11, rather than the immediate release Valencia seeks, see Petition at 12. At the same time, Respondents assert that "only EOIR [Executive Office for Immigration Review] can provide a bond hearing. That said, if ordered, ICE would do what is in its power to facilitate a hearing." Id. at 11.

The Court is not persuaded by Respondents' contention that an order directing a bond hearing would be the appropriate relief. First, Respondents had ample opportunity to argue that Valencia is or would be subject to detention under § 1226, but they failed to do so. Without any lawful basis for her detention at this time, the Court can only find that Valencia is entitled to immediate release. See, e.g., Rivero v. Mina, - - - F. Supp. 3d - - -, 2026 WL

15

199319, at *4 (M.D. Fla. Jan. 26, 2026); Bethancourt Soto v. Soto, 807 F. Supp. 3d 397, 410 (D.N.J. 2025).

Second, Respondents' representation that they will attempt to "facilitate" a bond hearing is, simply, not good enough. This is particularly true where an immigration judge is likely to refuse to conduct a bond hearing, citing Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025). In the event that occurs, Valencia would receive no relief at all, and the writ of habeas corpus issued in this case would be rendered entirely meaningless. Therefore, the Court finds the most appropriate relief is release from detention.

## V. Conclusion

Based on the above, the Court finds Valencia is entitled to immediate release because she is not properly detained under § 1225(b)(2). Since the Court will grant the Petition on the basis of Count One, it does not, and need not, address Valencia's remaining claim. See Banks v. Dretke, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").

Accordingly, it is **ORDERED**:

1. Valencia's Verified Petition for Writ of Habeas Corpus and Complaint for Emergency Declaratory and Injunctive Relief (Doc. 1) is

**GRANTED** as to Count One. Respondents shall release Valencia **within 24 hours of this Order**, and they shall facilitate her transportation from the detention facility by notifying her counsel when and where she can be collected. The Petition is otherwise **DENIED without prejudice** as moot.

    2.    Valencia's request for a preliminary injunction (Doc. 6) is **DENIED as moot**.

    3.    The **Clerk** is directed to terminate any motions, enter judgment granting the Petition as to Count One, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of March, 2026.

MARCIA MORALES HOWARD
United States District Judge

Jax-9 3/13
c:
Counsel of Record